**Aubrey KAUFMAN, Plaintiff,**

v.

**DIVERSIFIED INDUSTRIES, INC., Defendant.**

**No. 69 Civ. 4594.**

United States District Court, S. D. New York.

Jan. 29, 1973.

Halpin, Geogh & St. John, New York City, for plaintiff; Philip Handelman, Robert Trien, New York City, of counsel.

Powers & Gross, New York City, for defendant; Lawrence M. Powers, New York City, of counsel.

OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW UPON REMAND.

LEVET, District Judge.

On or about July 7, 1971 this court filed an Opinion, Findings of Fact and Conclusions of Law which awarded plaintiff—

(1) for breach of contract .......... $100,759.95 (see App. p. 346a in appeal record)

(2) for indemnity of plaintiff for attorneys fees .................. $ 33,585.00 (see App. p. 357a)

In the opinion of the Court of Appeals, filed May 22, 1972, 460 F.2d 1331 (2d Cir. 1972), the amount of damages to which plaintiff was entitled was reduced from $100,759.98 to $25,888.50. (At 1338.)

The Court of Appeals in its opinion stated:

"III. Other Recovery

"In addition to the damages occasioned by non-delivery Kaufman is entitled under section 6 of the agreement to indemnification for 'reasonable costs, legal and other expenses' incurred as a result of Diversified's breach. Since we have reduced the damage award significantly and legal fees depended on a contingent fee agreement which Judge Levet considered in making his award, it follows that Judge Levet should reconsider damages under the indemnification clause.[9]

"Finally, we agree that Kaufman is entitled to interest on the damage award pursuant to New York C.P.L.R. § 5001, which upon remand will be adjusted in light of the reduced recovery.

"We have examined the other arguments of the parties, but find them to be without merit.

"Affirmed in part, reversed in part and remanded for further proceedings in accordance with this opinion." (At 1338.)

In footnote 9 the opinion also stated:

"The district judge should be mindful that allowable costs have increased because of this appeal and the further proceedings that will be required. Since costs on appeal would be recoverable under the indemnity clause of the contract, it would be a waste of time to take the circuitous route of awarding costs on appeal against Kaufman only to permit him to be indemnified for these costs by Diversified. Accordingly, we direct that the costs on appeal be taxed against Diversified." (At 1338.)

In the trial court's opinion, the facts relative to the claims for attorneys' fees were set forth in Findings of Fact 15 through 23. (See Joint App. 347a–353a.) Likewise, in the same opinion the court's findings with respect to expenses of plaintiff's attorneys were set forth in the Joint Appendix 354a–356a.

The contract between plaintiff and defendant dated May 9, 1968, insofar as it relates to indemnity, is set forth in Joint Appendix 346a, paragraph 6. This provision was as follows:

"6. INDEMNITY BY DIVERSIFIED. Diversified hereby agrees to indemnify and hold each of the Stockholders harmless for a period of 36 months from the Closing Date against and in respect of any and all losses, claims, liabilities, damages or deficiencies resulting from any misrepresentation, breach of warranty or other breach hereof or failure of compliance by Diversified under this Agreement or in any document furnished to the Stockholders hereunder, and any and all reasonable costs, legal or other expenses incident to the foregoing.

"If any loss or other basis for indemnification by Diversified to the Stockholders hereunder shall result in any tax saving or other monetary benefit to the Stockholders, the amounts recoverable by the Stockholders hereunder shall be adjusted downward to reflect such benefit."

DISCUSSION

I.

At the hearing on remand on December 18, 1972 counsel for plaintiff Kauf-

mam attempted to introduce evidence with respect to what plaintiff had intended to do with the share he was originally about to receive from defendant Diversified upon the default. See SM on remand 2–11.

This court sustained the objection of defense counsel to the introduction of any proof with respect to plaintiff's intent. The trial has been completed. An appeal has been had, the judgment of the Court of Appeals was to reduce the amount of damages and the hearing on remand was not to relate to intent. Motion has been made for a rehearing, which was denied. Application has been made for certiorari and this, too, has been denied.

Furthermore, Philip Handelman, counsel for plaintiff, sought to introduce an affidavit of services. Defense counsel objected, particularly because the services rendered were subsequent to the judgment. I indicated that the Court of Appeals awarded costs on the appeal against Kaufman (see Note 9 at 1338), indicating that this was in lieu of permitting Kaufman to be indemnified by Diversified for these expenses. Moreover, the Court of Appeals opinion stated in part as follows:

" * * * The record in this case does not permit an inference that Kaufman would have sold the 13,170 shares had he received them on June 4. In fact, although Kaufman had the burden of proof on this issue, all the evidence points in the other direction. [Footnote omitted.]" (At 1337.)

## II.

At the hearing counsel for Diversified sought to impose indemnification in favor of defendant upon plaintiff. This purportedly was based upon the agreement. Plaintiff's Exhibit 1, App. 75a, paragraph 5. This provision was as follows:

"5. Indemnity By Stockholders. Each of the Stockholders hereby severally agrees to indemnify and hold Diversified harmless for a period of 36 months from the Closing Date against and in respect to his proportionate share of any and all losses, claims, liabilities, damages or deficiencies resulting from any misrepresentations, breach of warranty or other breach hereof or failure of compliance by the Stockholders or Company or its subsidiaries under this Agreement or in any document furnished by Diversified hereunder, and any and all reasonable costs, legal or other expenses incident to the foregoing."

Apparently defense counsel sought to collect indemnity from plaintiff on behalf of defendant because plaintiff sued on the agreement and perhaps, as it eventually apeared, demanded more than it was entitled to.

It is my opinion that plaintiff did nothing which requires him to pay in indemnity to defendant under the above-mentioned provision, paragraph 5. Any such contention is absurd. Defendant can show no violation of that provision by any act or failure to act by plaintiff.

These efforts of plaintiff and of defendant were tantamount to an assumption that the Court of Appeals had granted Kaufman a new trial. No such conclusion was indicated. The remand was clearly directed solely to a recomputation of the allowance to be made to plaintiff for attorneys' fees as the result of the reduced amount of damages.

## III.

Counsel for plaintiff cites certain decisions in which allowances for counsel fees exceeded the amount recovered in direct damages.

Osborn v. Sinclair Refining Company, 207 F.Supp. 856 (D.Md.1962), was a private antitrust action. Treble damages amounted to $975. Although the court allowed $14,000 in counsel fees, the court commented:

"This is an unusual case, for several reasons. The amount recovered is extremely small. But the legal principle established, albeit unwittingly, by counsel for plaintiff, is an impor-

tant one, and one of the purposes of private treble damage suits is to prevent the necessity of government civil suits or prosecutions to establish and correct violations of the antitrust laws. * * * " (p. 864)

Darden v. Besser, 257 F.2d 285 (6th Cir. 1958), was another action for violation of the antitrust laws. Treble damages amounted to $45,000. The appellate court increased the award for attorneys' fees from $10,000 to $30,000. In the appellate court opinion the court stated:

" * * * we are of opinion and so hold that, where the statute requires allowance of 'a reasonable attorney's fee,' the trial court abused its appropriate discretion in allowing the attorneys for the plaintiffs-appellants an inadequate award of only $10,000 in attorneys' fees for their excellent professional services. The successful prosecution of the corporate plaintiff's suit required learning, skill and experience in the field of litigation involved and the expending of a tremendous amount of time and labor by the attorneys." (p. 286)

Haverhill Gazette Company v. Union Leader Corporation, 333 F.2d 798 (1st Cir. 1964), cert. denied, 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1965) was likewise a private antitrust action. The district court allowed trebled damages of $88,326 and $60,000 for statutory attorneys' fees and $8,000 for expenses.

Plaintiff Kaufman in his memorandum after the hearing on the remand neglected to state that the Appellate Court in *Haverhill,* supra, set aside the determination of the District Court and ordered a new trial before another judge.

### IV.

Computed solely on an hourly basis the trial court originally found the value of the services to be $10,050. (See Finding No. 22, App. 352a–353a.)

At the time of the commencement of the action Kaufman paid a retaining fee of $10,000 to said attorneys (Ex. 21) and, in addition, agreed to pay one-third of any sum or property received and also any necessary disbursements. (Ex. 20.) (Finding No. 15, App. 347a.) It must not be overlooked that the fee in a substantial part was contingent.

As pointed out in my original opinion, the damages relative to attorneys' fees as a part of indemnity must be measured by the value of the services performed rather than by the amount of plaintiffs' retaining agreement.

Furthermore, the court is not bound by any contingent fee executed between plaintiff and his attorneys. See Fitzgerald v. Freeman, 409 F.2d 427 (7th Cir. 1969), rehearing denied, May 9, 1969.

In Webster Motor Car Co. v. Packard Motor Car Co., 166 F.Supp. 865 (D.D.C. 1955), a treble damage antitrust suit, Holtzoff, D. J., in connection with the determination of plaintiff's attorneys' fees under the Antitrust Act, wrote:

" * * * Although there are some expressions to the contrary, it is the view of this Court that in such a case as this, it is not the function of the Court to fix the fee that counsel should charge his client, and then assess that against the defendant. My conception is that it is the duty of the Court to determine what contribution should be made by the defendant toward the fees of plaintiffs' counsel." (p. 866)

Continuing, Judge Holtzoff added:

"I say that lest there be any misunderstanding. It is not my intention to determine or express an opinion or even an intimation how much plaintiffs' counsel should charge his client. I might say in passing that in my opinion the amount that the plaintiffs' counsel is entitled to charge his client is much larger than the amount I intend to award as the amount to be paid by the defendants." (p. 866). Cross-appeal in respect to attorneys' fees dismissed, 100 U.S.App.D.C. 161, 243 F.2d 418, cert. denied, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38, rehear-

ing denied, 355 U.S. 900, 78 S.Ct. 259, 2 L.Ed.2d 197 (1957), rehearing denied, 357 U.S. 923, 78 S.Ct. 1358, 2 L.Ed.2d 1363 (1958).

In determining the amount of compensation to be paid an attorney upon a quantum meruit basis, the various factors which may be considered include the character and extent of the services and the nature of the litigation or the transaction in which they were rendered, the intricacy or difficulty of the case and of the questions and problems confronting the attorney, the novelty of the issue involved, the attorney's standing in the profession for learning, ability and integrity, as well as professional reputation and experience, or, as it has been otherwise stated, his reputation in the specialty in which he was engaged, the ability and experience required by the litigation, and the skill exercised by the attorney in handling the same, the skill and eminence of opposing counsel, the amount of money involved, the degree or amount of responsibility assumed by the attorney, the results accomplished by the attorney, that is, the benefit inuring to the client as a result of the services, the amounts customarily charged or allowed for similar services in the same locality. See 3 N.Y.Jur. § 102, pp. 509–513. See also Knapp v. McFarland, 344 F.Supp. 601 (S.D.N.Y.1971) (opinion after remand from 457 F.2d 881 (2d Cir. 1972).

The time actually spent by the attorney on a case may be material but it is not controlling over other circumstances which help to determine the value of his services. 3 N.Y.Jur. § 103, p. 514.

Considering all the factors which are relevant to the fixing of reasonable attorneys' fees under the indemnity agreement, I am of the opinion that the fair and reasonable amount under the facts and circumstances of this case is $12,000.

After hearing the testimony of the parties, examining the exhibits, pleadings and Proposed Findings of Fact and Conclusions of Law and post-hearing memoranda submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT and CONCLUSIONS OF LAW

1. Neither plaintiff nor defendant has submitted any additional relevant testimony or proof whatsoever with respect to the amount of attorneys' fees and expenses to which plaintiff is entitled after the reduction in the amount of damages heretofore stated, to wit, from $100,759 to $25,888.50.

2. Under all the facts and circumstances of this case and considering the reduction of damages as determined by the Court of Appeals to $25,888.50, plaintiff is reasonably entitled to $12,000 in attorneys' fees plus expenses as stated in my original opinion.

3. As directed by the Court of Appeals, plaintiff is entitled to interest on the sum of $25,888.50 for the periods indicated in my original opinion but to date of entry of amended judgment after the remand.

4. No costs are allowed to or against either party.

Settle amended judgment promptly on notice pursuant hereto.