**PEERLESS DENTAL SUPPLY CO., Inc.**

v.

**WEBER DENTAL MANUFACTURING COMPANY and Heinsheimer Dental Supplies, Inc.**

**Civ. A. No. 42985.**

United States District Court
E. D. Pennsylvania.

April 2, 1968.

Israel Packel, Philadelphia, Pa., for petitioner.

A. E. Hurshman, Philadelphia, Pa., for respondents.

## MEMORANDUM OPINION

WEINER, District Judge.

Plaintiff Peerless Dental Supply Co. has in the past been the authorized distributor of the products of defendant Weber Dental Manufacturing Co. On or about April 10, 1967, plaintiff alleges, defendant Weber suddenly and without cause discontinued plaintiff's distributorship, replacing Peerless with defendant Heinsheimer Dental Supplies, Inc. In this connection, continue plaintiff's allegations, defendant Heinsheimer unlawfully conspired with Weber to restrain Peerless from doing business with its regular customers, thereby violating section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

The issue before us concerns only the defendant distributor, Heinsheimer. Assuming plaintiff's factual allegations to be true for the purposes of its motion, defendant Heinsheimer asserts that these do not make out a case under the Sherman Act as to it, and consequently moves this court for summary judgment, pursuant to Fed.R.Civ.P. 56. From the affidavits submitted by plaintiff Peerless in its original case, its claim of an antitrust violation as to Heinsheimer appears to be based on the averment that Heinsheimer in league with Weber replaced plaintiff as the supplier of plaintiff's former customers, in particular, joining with defendant manufacturer Weber in the false representation to a former Peerless customer in at least one instance that Peerless was out of business and could not fill the requested order. Our task is to test the sufficiency of this allegation as to defendant-petitioner Heinsheimer under 15 U.S.C. § 1.

Section 1 of the Sherman Antitrust Act, as has long been construed by the Supreme Court, prohibits combinations or conspiracies in unreasonable restraint of trade, 15 U.S.C. § 1; Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 58, 61–62, 75, 31 S.Ct. 502, 55 L.Ed. 619 (1911). An exclusive dealership, such as here involved, not part of a scheme to monopolize or fix prices, "has invariably been upheld as a reasonable restraint of trade," Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S.App.D.C. 161, 243 F.2d 418, 420, cert. denied, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38, rehearing denied, 355 U.S. 900, 78 S.Ct. 259, 2 L.Ed.2d 197 (1957).

In the *Packard* case, the facts presented an even more compelling dilemma than here. There the largest of three competing Packard dealers in Baltimore threatened to quit unless Packard awarded it an exclusive contract. Packard agreed, set its plans in motion, and one of the other dealers brought suit under Sherman §§ 1, 2, 15. Reversing a $190,-000 jury verdict for plaintiff, the Dis-

trict of Columbia Circuit noted that the facts that other dealers in the same product were eliminated and that one of the competing dealers had requested the arrangement did not make it illegal; for these were the natural characteristics of the birth of an exclusive dealership, itself not illegal under the Sherman Act, id. at 421; accord, Schwing Motor Co. v. Hudson Sales Co., 138 F.Supp. 899 (D.Md.), aff'd, 239 F.2d 176 (4th Cir. 1956), cert. denied, 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957).

A different, if related, issue was raised by a recent Supreme Court case involving automobile dealers who conspired to prevent some of their competitors also holding franchises from General Motors from directly or indirectly selling Chevrolets at a discount. Unlike the instant case of a sole distributor replaced by another, in United States v. General Motors, 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966), as the Court there stressed:

> We have here a classic conspiracy in restraint of trade: *joint, collaborative action by dealers,* the appellee associations, and General Motors *to eliminate a class of competitors* by terminating business dealings between them and a minority of Chevrolet dealers *and to deprive franchised dealers of their freedom to deal* through discounters if they so choose. * * *
>
> There is in the record ample evidence that *one of the purposes behind the concerted effort* to eliminate sales of new Chevrolet cars by discounters *was to protect franchised dealers from* real or apparent *price competition.*

Id. at 140, 147, 86 S.Ct. at 1327, 1331 (emphasis supplied). No such joint horizontal action or price-fixing purpose is present in the case before us.

An even more recent Supreme Court case illustrates a second related, but distinct, type of exclusive dealing arrangement whose restraining characteristics cause it to run afoul of the Sherman Act. In Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968), a newspaper, a circulation sales company which solicited readers, and a rival carrier conspired to force the original carrier to maintain a specified retail price over its newspaper route. Although this was a conspiracy to maintain a *maximum* price, the Court reiterated its

> long-accepted rule in [Sherman] § 1 cases that resale price fixing is a *per se* violation of the law whether done by agreement or combination.

Id. at 151, 88 S.Ct. at 872. As Mr. Justice Douglas explained in his separate concurrence:

> A fixing of prices for resale is conspicuously unreasonable because of the great leverage that price has over the market.

Id. at 154, 88 S.Ct. at 874.

■ In the instant case, as regards the distributing defendant Heinsheimer, neither exclusionary practices nor resale price maintenance is alleged. Merely the substitution by a manufacturer of one exclusive distributor for a rival exclusive distributor, even at the instigation of the replacing dealer, is not a combination in restraint of trade under the Sherman Antitrust Act.

## ORDER

And now, April 2, 1968, the motion of defendant distributor, Heinsheimer Dental Supplies, Inc., for summary judgment pursuant to Fed.R.Civ.P. 56(c) is hereby granted.

It is so ordered.