**TRIPOLI COMPANY, Inc.**

v.

**WELLA CORPORATION.**

**C. A. No. 44332.**

United States District Court
E. D. Pennsylvania.

June 26, 1968.

---

David S. Malis, of Malis & Feldman, Philadelphia, Pa., for petitioner.

Lewis H. Gold, of Adelman & Lavine, Philadelphia, Pa., for respondent.

## OPINION

WEINER, District Judge.

Defendant manufacturer has moved for summary judgment, pursuant to Fed.R.Civ.P. 56(b), against plaintiff distributor, in this private, treble-damage antitrust action. In its original suit, plaintiff complains that after approximately thirty years of distributing defendant's beauty supplies to retailers and consumers, plaintiff has now been refused defendant's trade. In its complaint, plaintiff alleges that defendant has so acted on the ground that plaintiff has from time to time charged its customers a price lower than that which defendant recommended for resale.

In its answer to the complaint, defendant denies as "utterly false and untrue" the allegation that resale price maintenance figured among its motives in discontinuing plaintiff as one of its distributors. Rather, defendant counters, its reasons for ceasing to sell to plaintiff were based solely on the latter's unwillingness to follow defendant's instructions that certain of its products were to be sold in accordance with the instructions marked thereon, viz.: "for professional use only, not to be resold [to the non-expert public at large].

At this stage of the pleadings, defendant made its motion for summary judgment. Thereafter both plaintiff and defendant submitted opposing affidavits, as specifically required by amended Rule

56(e). Issue is therefore joined for the purposes of this motion.

Discussion of plaintiff-respondent's contentions in its complaint must be divided into two parts. We deal first with any cause of action which might be made out under the antitrust laws. We shall then focus upon the specific case made out by the respective parties on this motion by defendant-petitioner for summary judgment in its favor.

In its complaint, and again in its brief opposing the instant motion, respondent speaks of violations of simply "the Clayton and Robinson-Patman Acts." Respondent appears to seek the protection, more exactly, of the Clayton Anti-Trust Act §§ 1, 2 (as amended by the Robinson-Patman Act § 1), and 4, 15 U.S.C. §§ 12, 13, and 15.

■ Although respondent uses the language of the cases under Sherman Act § 1 (as amended by the Miller-Tydings Fair Trade Act), now 15 U.S.C. § 1,[1] by alleging a refusal to deal on the part of petitioner allegedly because of respondent's lack of cooperation toward resale price maintenance, Sherman Act § 1 avails respondent nothing, because no "contract, combination * * * or conspiracy" has been either pleaded or proved. Contrast Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed. 2d 998 (1968); United States v. Arnold, Schwinn & Co., 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967); United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); Frey & Son v. Cudahy Packing Co., 256 U.S. 208, 41 S.Ct. 451, 65 L.Ed. 892 (1921); Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U.S. 373, 31 S. Ct. 376, 55 L.Ed. 502 (1911).

■ Clayton Act § 2, 15 U.S.C. § 13, prohibits price discrimination. Unlike Sherman Act § 1, it does not require a "contract, combination * * * or conspiracy, in restraint of trade," but makes it unlawful, rather,

for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality * * * where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce * * *.

From the portion of Clayton Act § 2 here quoted, it will readily be seen that the discrimination decried presupposes unequal treatment between two otherwise equally situated customers, and that the section does not envisage the type of situation of which respondent complains in its treble-damage action.

In short, even if its pleadings were taken on their face, and even if petitioner had, as alleged, refused to deal unilaterally with respondent because the latter declined to maintain a resale price to petitioner's liking, without the added circumstance of a conspiracy of which petitioner were a part, or of a price discrimination practiced upon respondent to another's advantage, respondent has made out no cause of action cognizable under the federal antitrust laws. On this motion, however, there is an even more compelling reason why summary judgment must be granted petitioner.

1. The Sherman Act § 1 reads, in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade * * * is declared to be illegal: *Provided*, That nothing contained in sections 1-7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity [under a trademark or brand name] * * * when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law, or public policy now or hereafter in effect in any State * * * in which such resale is to be made * * *." Pennsylvania, the relevant state in this action, has a fair-trade act, see 73 P.S. § 7 et seq. See also Olin Mathieson Chem. Corp. v. White Cross Stores, 414 Pa. 95, 199 A.2d 266 (1964); Olin Mathieson Chem. Corp. v. Cohen, 234 F.Supp. 80 (E.D.Pa.1964).

As has often been pointed out, Rule 56(e) was amended in 1963 for the specific purpose of overcoming "some judicial authority, notably in the Third Circuit, * * * that affidavits could not cut through well-pleaded allegations," 6 J. Moore, Federal Practice ¶ 56.11[3], at 2162 (2d ed. 1966). The Third Circuit itself has recognized this, and has declared itself in accord with the amendment both in letter and in spirit. In this vein, Judge Freedman, quoting the Advisory Committee on Rules, wrote as follows:

'The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The [former] Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule * * *'

\* \* \* \* \* \*

■ This amendment must be made fully effective. Robin Constr. Co. v. United States, 345 F.2d 610, 615 (3d Cir. 1965). With this admonition in mind, we turn now to the pleadings and affidavits in the instant case.

Although, as mentioned above, respondent in its complaint charges that petitioner has refused to deal with it because respondent has occasionally charged its customers a price lower than that which petitioner recommended for resale, in respondent's affidavits submitted to show that "genuine issue as to any material fact" exists, for the purposes of Rule 56(c), the secretary of respondent corporation averred merely that petitioner would no longer sell to respondent products which it considered dangerous to the uninitiated consumers to whom respondent was reselling them.

■ Petitioner's affidavits, on the other hand, include a specific averment by the district sales manager for petitioner corporation that respondent's contention that petitioner attempted resale price maintenance "is factually and wholly incorrect." In such a posture, the pleadings and averments taken together appear to us to leave no "genuine issue as to any material fact" unresolved.

■ This is so, even keeping in mind the cautionary note expressed by the Supreme Court in Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), that the court

[must] look at the record on summary judgment in the light most favorable to * * * the party opposing the motion * * *. We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot.

Leaving aside the inapplicability to the rather doric[2] case before us of some of the dramatic characteristics of the above description, we think that in a quite recent discussion of Poller the Supreme Court has just laid down a standard for criteria to be applied to motions for summary judgment most appropriate to the instant petition:

[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

---

**2.** Cf. House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867, 870 (2d Cir. 1962), quoting George W. Warner & Co. v. Black & Decker Mfg. Co., 277 F. 2d 787, 790 (2d Cir. 1960).

■ In summary, respondent's complaint makes out no claim upon which relief may be granted under the federal antitrust laws. It is only a *concerted* refusal to deal with a motive of fixing prices that make out a *per se* antitrust violation, e.g., Albrecht v. Herald Co., supra, 390 U.S. at 149–151, 88 S.Ct. 869, 19 L.Ed.2d 998; Quinn v. Mobil Oil Co., 375 F.2d 273, 274–275 (1st Cir.), cert. dismissed, 389 U.S. 801, 88 S.Ct. 8, 19 L.Ed.2d 56 (1967). Even a commentator such as Assistant Attorney General Donald F. Turner, who favors extending the reach of the antitrust acts so as to include "the inducement of and participation in a series of tacit vertical price-fixing agreements," still recognizes the need for something more than isolated acts for conduct to run afoul of the antitrust laws by amounting to an offending *"program* of resale price maintenance effected by refusals to deal." D. Turner, The Definition of Agreement under the Sherman Act: Conscious Parallelism and Refusals to Deal, 75 Harv.L.Rev. 655, 689, 691 (1962) (emphasis supplied).

■ As for Clayton Act § 2, 15 U.S.C. § 13, prohibiting price discrimination, it bears no relevance to resale price maintenance, *Quinn,* supra at 274 n. 4;

Davidson v. Kansas City Star Co., 202 F.Supp. 613, 618 (W.D.Mo.1962); Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co., 224 F. 566 (S.D.N.Y.) (Hough, J.), aff'd, 227 F. 46 (2d Cir. 1915). Hence, on its pleadings, respondent has made no valid claim of any antitrust violation.

■ Even had respondent's allegations in its complaint made out a good claim, however, taken together with the affidavits of both parties to this motion, the resultant case for respondent is not sufficient to withstand this motion for summary judgment. The net claim respondent is heard to urge on this Rule 56 motion is that petitioner simply discontinued respondent as a distributor after many years of a hitherto mutually satisfactory commercial arrangement. For this there is no remedy under the antitrust laws,[3] cf. Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S. App.D.C. 161, 243 F.2d 418 cert. denied, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38, rehearing denied 355 U.S. 900, 78 S.Ct. 259, 2 L.Ed.2d 197 (1957); Schwing Motor Co. v. Hudson Sales Corp., 138 F. Supp. 899 (D.Md.), aff'd, 239 F.2d 176 (4th Cir. 1956) (per curiam); Peerless Dental Supply Co. v. Weber Dental Mfg. Co., 283 F.Supp. 288 (E.D.Pa., 1968).

---

**3.** E. Timberlake, Federal Treble Damage Antitrust Actions § 14.07 (1965), entitled "Individual refusals to deal," contains the following general proposition: "There can be no doubt that an independent refusal to deal may be unlawful," (citing cases). In whatever other circumstances this statement may hold true, the authority upon which it purports to be based affords no illustrative support, see Best Advertising Corp. v. Illinois Bell Tel. Co., 229 F.Supp. 275 (S.D.Ill.1964), aff'd, 339 F.2d 1009 (7th Cir. 1965) (complaint alleging refusal to deal with plaintiff's yellow-page advertising dismissed for failure to allege any antitrust violation); Albert H. Cayne Equip. Corp. v. Union Asbestos & Rubber Co., 220 F.Supp. 784 (S.D.N.Y.1963)

(complaint by ousted distributor for preliminary injunction restraining replacement for soliciting plaintiff's customers dismissed for failure to state facts constituting violations of either Sherman Act §§ 1 or 2 or Robinson-Patman Act); House of Materials, Inc. v. Simplicity Pattern Co., 298 F.2d 867 (2d Cir. 1962) (appellant's unilateral refusal to deal with fabric-store customers instituting treble-damage actions against it reluctantly upheld, and order below granting preliminary injunction against it reversed, *inter alia,* because the lack of "any concerted refusal to deal" made the claim fatally defective under Sherman Act § 1, which "requires some type of joint action * * *." Id. at 870).